USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/31/2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
CHRISTOPHER HUDSON, in his individual
capacity on behalf of himself and others similarly
situated,

                                Plaintiff,

                  -against-

NATIONAL FOOTBALL LEAGUE
MANAGEMENT COUNCIL, NATIONAL
FOOTBALL LEAGUE PLAYERS
ASSOCIATION, RETIREMENT BOARD OF
THE BERT BELL/PETE ROZELLE NFL
PLAYER RETIREMENT PLAN, KATHERINE
"KATIE" BLACKBURN, RICHARD "DICK"
CASS, TED PHILLIPS, SAMUEL MCCULLUM,
ROBERT SMITH, and JEFFREY VAN NOTE

                              Defendants.
-----------------------------------------------------------------X

1:18-cv-4483-GHW

ORDER

GREGORY H. WOODS, United States District Judge:

      Plaintiff Christopher Hudson is a retired National Football League ("NFL") Player. In this action, he is suing the Retirement Board of the NFL Player Retirement Plan (the "Board") and its members (collectively, the "Board Defendants"), the National Football League Management Council (the "Council"), and the National Football League Players Association (the "Association") for breach of fiduciary duties arising under the Employee Retirement Income Security Act ("ERISA"). The Court has already once dismissed Hudson's claims for failure to state a claim for breach of fiduciary duty against every Defendant. Because Hudson has failed to plausibly allege that the Board should have known that its failure to disclose its interpretation of changed circumstances would harm him, he has failed to cure the pleading deficiency the Court identified in its prior order. Accordingly, Defendants' motions to dismiss are GRANTED.

## I. BACKGROUND

On September 5, 2019, Magistrate Judge Lehrburger issued a thorough Report and Recommendation ("R&R") in this case. Dkt No. 90. That Report and Recommendation provides a detailed factual background. The Court subsequently issued an order (the "Order") adopting most of Judge Lehrburger's persuasive reasoning and dismissing all of Hudson's claims. Dkt No. 96. However, although the Report and Recommendation recommended that the Court dismiss all of Hudson's claims with prejudice, the Court granted Hudson leave to replead two of his claims. Order at 9. Specifically, the Court dismissed Hudson's claim against the Board Defendants for breach of fiduciary duty under ERISA § 404(a)(1)[1] but granted Hudson leave to replead "[t]o the extent that Plaintiff can plead additional facts which would support" such a claim. Order at 5. Similarly, the Court dismissed Hudson's claim against the Association and the Council for breach of their fiduciary duty to monitor arising under ERISA § 404(a)(1) but granted Hudson leave to replead facts to support such a claim. *Id.* at 7.

Hudson filed an amended complaint (the "AC") on November 19, 2019. Dkt No. 104. As in the original complaint, Hudson seeks certification of a class of "[a]ll participants of the Plan who filed a claim seeking total and permanent disability benefits prior to January 1, 2015 and the beneficiaries of such persons." AC ¶ 60. The amended complaint restates many of the allegations from the original complaint, which the Court will not recount at length in this opinion.

The new allegations in amended complaint fall into two buckets. The first relates to Hudson's argument that the Board should have known that its failure to disclose its interpretation of "changed circumstances" would harm plan participants like Hudson. The second relates to Hudson's argument that the Association and the Council should have known about the Board's alleged breach of fiduciary duty. The allegations in the amended complaint are accepted as true for

---

[1] *See* 29 U.S.C. § 1104(a)(1)(A)-(B).

the purposes of this motion to dismiss. *See, e.g.*, *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). However, "[t]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

**A. New Allegations Regarding the Board**

The first set of new allegations relates to Board's alleged failure to disclose important information to participants such as Hudson. Hudson alleges that the Board should have known that its failure to disclose its interpretation of "changed circumstances" would harm Plan participants like Hudson. In support, Hudson points to a *New York Times* article stated that Paul Scott, a former employee of the Plan Administrator, was instructed to "tell the players only what they needed to submit, not how to submit it." *Id.* ¶ 40. Hudson alleges that his experience was consistent with the New York Times' reporting. Hudson alleges that he spoke with multiple employees of the Plan Administrator, such as Scott, "[a]fter he was granted inactive benefits but before filing his request for reclassification . . . to ask questions about the process of and requirements for reclassification." *Id.* ¶ 41. These employees allegedly did not explain what proof Hudson would need to show to prove "changed circumstances" within the meaning of the Summary Plan Description ("SPD"). *Id.*

The amended complaint also alleges that Hudson spoke with a confidential witness who "had significant responsibility for administering the Plan between at least 2004 and 2016, including with respect to Plan's disclosures to and communications with Plan participants." *Id.* ¶ 42. The confidential witness informed Hudson that the Board "deliberately keeps the language [of the SPD] vague." *Id.* The confidential witness also allegedly told Hudson that he "received numerous calls from players who did not understand the SPD." *Id.* ¶ 43. However, Hudson alleges that "[t]he Board specifically instructed the Plan Administrator not to provide players who called with questions regarding reclassification with any information other than to refer them to the language of the SPD or to the NFLPA." *Id.* The confidential witness allegedly told Hudson that "the language

3

of the SPD and the Plan were 'vague on purpose' and provided no helpful information to participants." *Id.* ¶ 44.

Moreover, the confidential witness allegedly said that "[t]he Board kept 'secret definitions' for terms including 'clear and convincing,' 'total and permanent disability,' and 'changed circumstances' that were 'fuzzy on purpose' and not disclosed to Plan participants." *Id.* Hudson alleges that the confidential witness told him that he was instructed "that he had an obligation to be 'neutral'" and that he was "repeatedly cautioned against helping Plan participants[.]" *Id.* ¶ 45. Allegedly, "[i]t was clear to" the confidential witness "that neither the NFLPA nor the Management Council wanted the Plan Administrator to be answering the questions of Plan participants and that neither was interested in helping the retired players with their benefits and the NFLPA had to keep in mind how the awards would affect the current players." *Id.*

The amended complaint alleges that other NFL players had similar experiences interacting with Plan employees. One such player, Joe Phillips, "a former NFL football player and a Plan participant, contacted the Plan Administrator multiple times between 2009 and 2015 regarding his intention to request reclassification of benefits under the Plan." *Id.* ¶ 46. Although Phillips "called at least a dozen times expressing that he did not understand the SPD and asked questions about the process for reclassification and clarification about terms in the SPD meant," the Plan Administrator allegedly "failed to explain the standard of 'changed circumstances' or proof needed to prove 'changed circumstances' to" him. Rather than explain these terms, "[t]he Plan Administrator repeatedly referred him to the language of the Plan in response to his questions." *Id.* Former NFL player Leonard Marshall allegedly had similar experiences. *Id.* ¶ 47. The amended complaint alleges that Plan employees instructed Marshall to contact the Association, but that when Marshall did so, he "did not receive answers to his questions." *Id.*

4

### B. New Allegations Regarding the Association and the Council

The second set of new allegations in the amended complaint relate to what the Association and the Council knew or should have known about the Board's alleged breaches of fiduciary duty. Hudson alleges that Marshall's conversations with Association employees "should have alerted" the Association that the Board was breaching its fiduciary duty. *Id.* ¶ 48. The amended complaint also alleges that "[t]he persistently high rate at which retired players file suits regarding the denial of their benefits under the Plan should have alerted" the Association and the Council "that the Board Defendants were failing to provide adequate information to participants." *Id.* ¶ 49. The amended complaint cites lawsuits filed by Jeffrey D. Bryant, Brent V. Boyd, and Jesse Solomon that allegedly "relat[ed] to interpretation of the term 'changed circumstances' under the Plan[.]" *Id.* ¶ 50. According to Hudson, these lawsuits "should have alerted" the Association and the Council that the Board Defendants were breaching their fiduciary duties. *Id.*

Hudson also alleges that media reports should have put the Association and the Council on notice that the Board was breaching its fiduciary duties. The amended complaint alleges that there was a "pervasive belief" held by "former NFL players" that the Plan executed a strategy of "delay, deny, and hope they die" with respect to player benefits. *Id.* ¶ 51. The amended complaint cites news reports from *Vice* and the *New York Times* that contained this maxim. *Id.* Hudson alleges that these reports should have alerted the Council and the Association that the Board was breaching its fiduciary duties. *Id.*

The amended complaint also cites "[f]indings and recommendations" from the "Petrie-Flom Center for Health Law Policy, Biotechnology, and Bioethics at Harvard Law School." *Id.* ¶ 52. The Petrie-Flom center issued a report in 2017 that described the benefit-filing process as "complex and lengthy." *Id.* The report also found that although "the NFL and NFLPA offer many benefits and programs to current and former players to help them on a wide spectrum of issues, including most importantly healthcare[,] . . . many players are not taking full advantage of these programs." *Id.* The

5

same report noted that during interviews, "current and former players were generally unclear and unsure about what information they had received." *Id.* The report concluded that "bare provision of information and documents to the players is not sufficient," because "we know from behavioral science that too much information can be overwhelming and that certain approaches are more likely to result in comprehension and action." *Id.* The amended complaint alleges that this report should have alerted the Council and the Association that the Board Defendants were breaching their fiduciary duty. *Id.*

## II. LEGAL STANDARD

### A. Rule 12(b)(1)

A defendant may move to dismiss a plaintiff's complaint for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). "In resolving a motion to dismiss under Rule 12(b)(1), the district court must take all uncontroverted facts in the complaint . . . as true, and draw all reasonable inferences in favor of the party asserting jurisdiction. But where jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits. In that case, the party asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014) (internal alterations and citations omitted); *see also Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "Normally, motions to dismiss for lack of jurisdiction pursuant to Rule 12(b)(1) must be decided before motions pursuant to other Federal Rules of Civil Procedure are considered, since dismissal of an action for lack of subject matter jurisdiction will render all other accompanying defenses and motions moot." *Liberty Ridge LLC v. RealTech Sys. Corp.*, 173 F. Supp. 2d 129, 134 (S.D.N.Y. 2001) (internal alterations and citation omitted); *see also Burris v. Hous. & Servs. Inc.*, No. 17-CV-9289 (JGK), 2019 WL 1244494, at *1 (S.D.N.Y. Mar. 18, 2019).

6

**B. Rule 12(b)(6)**

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A defendant may nonetheless move to dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). It is not enough for a plaintiff to allege facts that are consistent with liability; the complaint must "nudge[]" claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. "To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).

Determining whether a complaint states a plausible claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (citation omitted). The court must accept all facts alleged in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 124 (2d Cir. 2008) (per curiam). However,

> "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." A complaint must therefore contain more than "naked assertions devoid of further factual enhancement." Pleadings that contain "no more than conclusions . . . are not entitled to the assumption of truth" otherwise applicable to complaints in the context of motions to dismiss.

*DeJesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 87-88 (2d Cir. 2013) (brackets omitted) (quoting *Iqbal*, 556 U.S. at 678-79). Thus, a complaint that offers "labels and conclusions" or "naked assertions"

without "further factual enhancement" will not survive a motion to dismiss. *Iqbal*, 556 U.S. at 678 (brackets omitted) (citing *Twombly*, 550 U.S. at 555, 557).

**III. DISCUSSION**

**A. Claim Against the Board Defendants**

Hudson has not plausibly alleged injury in fact, so he does not have constitutional standing and the Court lacks subject matter jurisdiction over this action. Hudson alleges a claim for breach of fiduciary duty against the Board Defendants. The Board argues that Hudson lacks constitutional standing to assert such a claim. The requirements of constitutional standing implicate the court's subject matter jurisdiction. *See E.M. v. N.Y.C. Dep't of Educ.*, 758 F.3d 442, 449 (2d Cir. 2014) ("Article III, Section 2, of the United States Constitution limits federal courts' jurisdiction to 'Cases' and 'Controversies.' As part of this limitation, parties seeking to bring suit in federal court must establish standing under Article III to assert their claims."). Because the Court must determine whether it has subject matter jurisdiction before ruling on the merits, *see Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-101 (1998), the Court addresses that issue first.

The "'irreducible constitutional minimum' of standing consists of three elements." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* (citing *Lujan*, 504 U.S. at 560-61; *Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000)). To plausibly allege "injury in fact," a plaintiff must allege "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *E.M.*, 758 F.3d at 449 (quoting *Lujan*, 504 U.S. at 560). "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements." *Spokeo*, 136 S. Ct. at 1547 (citing *FW/PBS, Inc. v. Dallas*, 493 U. S. 215, 231 (1990)). "Where, as here, a case

8

is at the pleading stage, the plaintiff must 'clearly allege facts demonstrating' each element." *Id.* (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)) (ellipsis omitted).

The Second Circuit has held that "a breach of fiduciary duty under ERISA in and of itself does not constitute an injury-in-fact sufficient for constitutional standing." *Trs. of the Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 569 (2d Cir. 2016) (quotation omitted); *see also Kendall v. Emps. Ret. Plan of Avon Prods.*, 561 F.3d 112, 121 (2d Cir. 2009), *abrogated on other grounds*, *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 127 (2014) (holding that a plaintiff "cannot claim that either an alleged breach of fiduciary duty to comply with ERISA, or a deprivation of her entitlement to that fiduciary duty, in and of themselves constitute an injury-in-fact sufficient for constitutional standing"). Rather, a plaintiff "must allege some injury or deprivation of a specific right that arose from a violation of" a statutory duty under ERISA "in order to meet the injury-in-fact requirement." *Kendall*, 561 F.3d at 121.[2]

---

[2] Hudson relies on the Second Circuit's holding that "the disclosure requirements and fiduciary duties contained in ERISA create in [a participant] certain rights, including the rights to receive particular information and to have [a defendant] act in a fiduciary capacity. Thus, [a plaintiff] *need not demonstrate actual harm* in order to have standing to seek injunctive relief requiring that [defendant] satisfy its statutorily-created disclosure or fiduciary responsibilities." *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 433 F.3d 181, 199 (2d Cir. 2005) (quoting *Horvath v. Keystone Health Plan E., Inc.*, 333 F.3d 450, 456 (3d Cir. 2003)) (emphasis added). The viability of his holding is in question in light of the Supreme Court's holding in *Spokeo* that a plaintiff "cannot satisfy the demands of Article III by alleging a bare procedural violation." 136 S. Ct. at 1550. The Court also observes that *Central States*' holding that a plaintiff "need not demonstrate actual harm," *Cent. States*, 433 F.3d at 199 (quotation omitted), appears to be in significant tension with the requirement that an injury must be "actual or imminent, not conjectural or hypothetical" to constitute an injury in fact. *Lujan*, 504 U.S. at 560.

Ultimately, the Court need not take a position on the question of whether *Central States* remains viable in light of *Spokeo* because Hudson is not asking primarily for injunctive relief. *Central States* explained that "[r]equests for restitution or disgorgement under ERISA are different from requests for injunctive relief. Obtaining restitution or disgorgement under ERISA requires that a plaintiff satisfy the strictures of constitutional standing by demonstrating individual loss, to wit, that they have suffered an injury-in-fact." 433 F.3d at 200 (quotation and alterations omitted). Although Hudson frames his claims as claims for injunctive relief, he is seeking additional benefits that were allegedly denied to him under the Board's interpretation of the reclassification provision. AC at 30-31. And the *Kendall* court made clear that where "many of [a plaintiff's] claims are effectively claims for money damages," the lesser requirements for injunctive relief—as opposed to "requests for restitution or disgorgement"—do not apply. 561 F.3d at 119 (quotation and brackets omitted).

Moreover, *Kendall* clarified *Central States* and held that even where participants do "not have to show they were specifically injured, pecuniarily or otherwise," they must still show "that they were generally harmed by the deprivation of a specific right to receive information." *Kendall*, 561 F.3d at 120-21. Hence, Hudson must show that he was deprived of a specific right to receive information under ERISA to establish injury in fact.

9

The specific right Hudson alleges was impinged was his right to "competent, loyal fiduciaries who would have adequately informed him of the standard for 'changed circumstances' (instead of actively endeavoring to conceal that standard from players)." Memorandum of Law in Opposition to Motion to Dismiss ("Opp."), Dkt No. 120, at 15 (citing AC ¶¶ 3, 71). "As a result of this violation," Hudson alleges, he was not "properly informed that subsequently seeking reclassification and/or modification of their category of benefits would require a higher standard and that seeking an[] early application would unnecessarily lock [him] into a lower category of benefits." AC ¶ 71.

Hudson has not demonstrated that he was deprived of a specific right arising under ERISA. Hudson's argument rests on the premise that the Board Defendants had an affirmative duty to inform Hudson about its interpretation of "changed circumstances." If the Board Defendants did not have such an affirmative duty, then Hudson was not deprived of a specific right to be informed. And the Board Defendants had no such duty. The Court previously held that "there are no allegations in the complaint that the Retirement Board made any misleading representations or that the Board had any reason to know that its failure to disclose its interpretation of 'changed circumstances' might cause Plaintiff harm." Order at 5. In other words, the Board Defendants did not have an affirmative duty to disclose its interpretation of "changed circumstances," at least absent any reason to know that their failure to do so would harm Hudson.

Hudson has not adequately alleged that the Board Defendants had a reason to know that its failure to disclose its interpretation of "changed circumstances" would harm Hudson. Hudson alleges that the Board Defendants "ke[pt] the terms of the Plan intentionally vague and refus[ed] to provide clarification in response to participant questions[.]" AC ¶ 68. This is not an allegation that the Board Defendants had reason to know that their failure to disclose their interpretation would harm Hudson.[3] Similarly, the amended complaint's allegation that the Board Defendants

---

[3] The Court also observes that it previously held that the SPD complied with ERISA. *See* Order at 3-4 (holding the SPD "reasonably apprised plan participants that a failure to put forth comprehensive evidence in their initial applications for

10

"instruct[ed] those persons employed on its behalf (i.e. Plan Administrator) . . . to withhold information regarding the standard for 'changed circumstances' from participants in response to inquiries, and to only provide participants with the language of the Plan and the SPD" is not an allegation that the Board Defendants had reason to know that their failure to disclose their interpretation of "changed circumstances" would harm Hudson. *Id.* ¶ 69. Therefore, Hudson has not established that he was deprived of a specific right arising under ERISA and cannot demonstrate injury in fact to establish constitutional standing.

Hudson's argument to the contrary is unpersuasive. Contrary to Hudson's assertions, the Court cannot draw a reasonable inference from these allegations that the Board Defendants had reason to know that their failure to disclose their interpretation of "changed circumstances" would harm Hudson. That the Board Defendants maintained a vague policy does not give rise to an inference that the Board Defendants knew that their failure to disclose would harm Hudson. Indeed, the Board cannot reasonably have been expected to adopt a policy that would address every claimant's circumstances.

As for Hudson's allegation that Plan staff was unhelpful, there is an "obvious alternative explanation," *Twombly*, 550 U.S. at 567: Plan staff do not have authority to provide authoritative interpretations of the Plan to participants. In fact, the Second Circuit has held that fund fiduciaries can be held liable for the actions of their ministerial employees. *See DeRogatis v. Bd. of Trs. of the Welfare Fund of the Int'l Union of Operating Eng'rs Local 15 (In re DeRogatis)*, 904 F.3d 174, 190-91 (2d Cir. 2018). Hence, the Court cannot draw any inference from the Plan staff's failure to deviate from the language of the SPD in advising Plan participants. Moreover, the SPD adequately disclosed the heightened standard for reclassification, so Plan staff would have had no reason to deviate from its

---

benefits could permanently lock them into a lower benefits classification" and that "[t]he SPD did not need to include additional language to provide notice that [Hudson's] potential reading was unfounded"). This conclusion further undercuts Hudson's argument that the Board's disclosures were inaccurate.

11

language in explaining its terms to Plan participants. Accordingly, Hudson's argument that the allegations in the amended complaint permit the Court to draw a reasonable inference that the Board Defendants knew that their failure to disclose their interpretation of "changed circumstances" is unavailing.

Hudson has not demonstrated injury in fact for the independent reason that the AC does not allege that Hudson sought information about the reclassification standard before he applied for benefits. The AC does not allege how Hudson would have changed his initial application for benefits if the Board had disclosed its interpretation of "changed circumstances." Thus, Hudson does not suggest what alternative course of action he could have taken that would have led to him receive a higher level of benefits. To qualify as injury in fact, a plaintiff's alleged injury must be "actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560. But absent a specific allegation about what Hudson would have done differently, his allegations that he would have received a higher level of benefits if the Board disclosed its interpretation of "changed circumstances" are conjectural. This is another reason that Hudson has failed to demonstrate injury in fact.

For the same reasons, Hudson has not stated a claim upon which relief can be granted. As the Court previously noted, "[w]hen a plan administrator affirmatively misrepresents the terms of a plan or fails to provide information when it knows that its failure to do so might cause harm, the plan administrator has breached its fiduciary duty to individual plan participants and beneficiaries." Order at 5 (quoting *Devlin v. Empire Blue Cross & Blue Shield*, 274 F.3d 76, 88 (2d Cir. 2001)). Because there were "no allegations in the complaint that the Retirement Board made any misleading representations or that the Board had any reason to know that its failure to disclose its interpretation of 'changed circumstances' might cause Plaintiff harm," the Court dismissed Hudson's claim. *Id.*

The allegations in the amended complaint do not remedy this deficiency. As noted above, the amended complaint fails to allege that the Board Defendants made any misleading

12

representations or that they had reason to know that their failure to disclose their interpretation of "changed circumstances" might cause Hudson harm. Accordingly, Hudson's arguments against dismissal are unavailing and this is an alternative ground on which the Court can dismiss Hudson's claims.

### B. Claims Against the Council and the Association

Hudson's claims against the Council and the Association cannot proceed because Hudson has failed to state an underlying claim for breach of fiduciary duty against the Board. Hudson alleges a breach of the fiduciary duty to monitor against the Council and the Association. *See* AC ¶¶ 72-79. Hudson's argument requires a predicate breach of fiduciary duty by the Board Defendants. *See In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*, 763 F. Supp. 2d 423, 580 (S.D.N.Y. 2011) ("A claim for breach of the duty to monitor requires an antecedent breach to be viable.") (citations omitted). The Court has already determined that Hudson has not adequately alleged a claim against the Board Defendants. Accordingly, Hudson's claims against the Association and the Council are dismissed.

Even if Hudson had adequately pleaded an underlying breach, Hudson has not adequately alleged a breach of the duty to monitor against the Council and the Association. "Even assuming that the scope of the duty to monitor as described in these single employer plan cases is the same in the multi-employer plan context—a premise that the Court [still] does not necessarily accept in light of the Supreme Court's decision in *NLRB v. Amax Coal Co.* and Judge Lehrburger's persuasive reasoning on this point," Order at 6-7 (citing 453 U.S. 322, 330 (1981)), that duty is limited. At most, the duty to monitor required the Council and the Association to review "at reasonable intervals the performance of trustees and other fiduciaries . . . in such a manner as may be reasonably expected to ensure that their performance has been in compliance with the terms of the plan and statutory standards, and satisfies the needs of the plan." *Liss v. Smith*, 991 F. Supp. 278, 311 (S.D.N.Y. 1998) (quotation omitted). As Judge Lehrburger persuasively reasoned, this limited duty

extends only to "whether its appointed members to the Retirement Board attended meetings, cast votes, or otherwise carried out their other duties" and not "the decisions made by the trustees." R&R at 38.

Put simply, the duty to monitor extends only to ensuring *that* appointing fiduciaries are performing their duties, not *how* they are performing those duties. Indeed, the rationale for creating the Board and granting it primary responsibility for administering the plan is so that the appointing fiduciaries such as the Council and the Association do not have to conduct an in-depth review of its decisions. *See, e.g.*, *Lingis v. Motorola, Inc.*, 649 F. Supp. 2d 861, 881-82 (N.D. Ill. 2009). Thus, the broad scope of the duty to monitor proposed by Hudson would undermine the rationale for delegating responsibility for the administration of the Plan to the Board in the first place. Consequently, Hudson's allegations against the Council and the Association are inadequate to state a breach of the duty to monitor for this independent reason.

## IV. CONCLUSION

Hudson has failed to remedy the deficiencies the Court identified in his original complaint. Because the Court has already granted Hudson leave to replead once and Hudson has failed to cure the deficiencies in his pleading, the Court concludes that repleading would be futile. Accordingly, the Court will not again grant Hudson leave to replead. *See Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 18 (2d Cir. 1997) (explaining that leave to amend need not be granted where the proposed amendment would be futile). The Clerk of Court is directed to terminate the motions pending at Dkt. Nos. 111, 113, and 116 and to close this case.

SO ORDERED.

Dated: March 31, 2020

GREGORY H. WOODS
United States District Judge